# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-741


**CHET DAVID JEANSONNE**

**VERSUS**

**CORY PAUL ROY, ET AL.**


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2012-7682-B/O
HONORABLE J. BYRON HEBERT, JUDGE PRO TEMPORE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, Billy Howard Ezell, Shannon J. Gremillion, and John E. Conery, Judges.

**Conery, J., dissents and assigns reasons.**

**Thibodeaux, Chief Judge, dissents for the reasons stated in Judge Conery's dissent.**


**AFFIRMED IN PART; REVERSED IN PART;**
**AND RENDERED.**

**Kelvin G. Sanders**
**Attorney at Law**
**P.O. Box 13922**
**Alexandria, LA 71301-3922**
**(318) 613-8112**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Chet David Jeansonne**

**Henry H. Lemoine, Jr.**
**Attorney at Law**
**607 Main St.**
**Pineville, LA 71360**
**(318) 473-4220**
**COUNSEL FOR DEFENDANT/APPELLANT/APPELLEE:**
    **Cory P. Roy, Attorney at Law, L.L.C.**
    **Cory P. Roy, Individually**

**Sidney Jay Hardy**
**Kyle P. Kirsch**
**Lou Anne Milliman**
**McCranie, Sistrunk, Anzelmo,**
    **Hardy, McDaniel & Welch**
**909 Poydras St., Suite 1000**
**New Orleans, LA 70112**
**(504) 831-0946**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Escude, Inc.**

**PICKETT, Judge.**

The plaintiff Chet Jeansonne appeals judgments of the trial court that: 1) grant summary judgment in favor of the defendant funeral home that exhumed his daughter's remains, delivered them to a physician for an autopsy, then reburied the remains after the autopsy was complete; 2) denied his motion for new trial on the motion for summary judgment; and 3) granted a peremptory exception of no cause of action in favor of the defendant attorney who obtained an ex parte order to exhume and have an autopsy performed on his daughter's remains. The defendant attorney appeals the trial court's denial of his motion to strike as provided for in La.Code Civ.P. art 971, seeking an award of attorney fees and costs.

For the following reasons, we affirm the trial court's judgments to the extent that they grant summary judgment in favor of the defendant funeral home, deny the motion for new trial, and grant the defendant attorney's exception of no right of action. We reverse the trial court's denial of the defendant attorney's motion to strike and award him attorney fees and costs.

### FACTS

On February 14, 2011, Mr. Jeansonne found his daughter, Morgan Nicole Jeansonne, dead in his home in Avoyelles Parish from a self-inflicted gunshot wound. The coroner of Avoyelles Parish performed an autopsy and determined the cause of Morgan's death was suicide. Thereafter, Mr. Jeansonne hired Escude Funeral Home to handle Morgan's funeral services and bury her at St. Paul Catholic Church Cemetery in Mansura, Louisiana.

Mr. Jeansonne and Morgan's mother, Sharleen Desselles Jeansonne, were divorced at the time of Morgan's death. On March 4, 2011, Ms. Jeansonne's attorney, Cory P. Roy, filed an Exparte Motion to Exhume and/or For the

Disinterment of Remains for Autopsy Purposes Pursuant to La.R.S. 8:660, seeking a court order for the exhumation and autopsy of Morgan's body. The order attached to the motion contained two alternatives: one granting the relief requested and the other ordering Mr. Jeansonne to show cause why the motion should not be granted. Unable to meet with Judge Bennett, the judge to whom the matter was assigned, Mr. Roy met with another judge who contacted Judge Bennett and discussed Mr. Roy's motion and order with him.

According to Mr. Jeansonne's Petition, Judge Bennett questioned whether "the Coroner L.J. Mayeaux was 'in the loop'" regarding the Motion, and Mr. Roy responded that "the coroner 'was in the loop' thus giving the impression the action was 'officially' sanctioned by the coroner." After receiving Mr. Roy's response, Judge Bennett authorized the signing of the order on his behalf. The signed order (the Order) authorized the first alternative and struck the second alternative, such that the Order provides, in pertinent part:

> **CONSIDERING** the foregoing verified rule and this cause, it is,
>
> **ORDERED** that the appropriate authority exhume/disinter the remains of Morgan Nicole Jeansonne and submit them to a competent physician for the purposes of performing an autopsy and determine the exact cause of death.
>
> **FURTHER ORDERED** that the applicable cemetery authority comply and assist with the exhumation/disinterment of the remains of Morgan Nicole Jeansonne.

After the Order was signed, Ms. Jeansonne personally delivered a copy of it to Escude. Upon receipt of the Order, Escude exhumed Morgan's casket, transported it to Rapides General Hospital for an autopsy to be performed, and returned the casket to its crypt after the autopsy was completed. Mr. Jeansonne

was not served with the Order until on March 7, 2011, which was after the exhumation.

Mr. Jeansonne filed suit against Mr. Roy and Escude, Inc., which operates Escude Funeral Home, seeking damages. Mr. Roy answered the suit and filed a peremptory exception of no cause of action and a special motion to strike pursuant to La.Code Civ.P. art 971. Escude answered the suit and filed a motion for summary judgment. The trial court granted Mr. Roy's exception of no cause of action but allowed Mr. Jeansonne to amend his petition and granted Escude's motion for summary judgment; it denied Mr. Roy's motion to strike.

Mr. Jeansonne filed a supplemental and amending petition and a motion for new trial on Escude's motion for summary judgment. Mr. Roy answered the supplemental and amending petition and filed a second exception of no cause of action. At the hearing on Mr. Jeansonne's motion for new trial, Mr. Roy filed a second motion to strike. The trial court denied the motions for new trial and to strike. After a separate hearing, the trial court granted Mr. Roy's second exception of no cause of action.

Mr. Jeansonne appealed the trial court's grant of Mr. Roy's second exception of no cause of action, grant of Escude's summary judgment, and denial of his motion for new trial. Mr. Roy appealed the denial of his special motion to strike.

## ASSIGNMENTS OF ERROR

In his appeal, Mr. Jeansonne assigns three errors: 1) the trial court erred in granting Mr. Roy's exception of no cause of action; 2) the trial court erred in granting Escude's motion for summary judgment; and 3) the trial court erred in denying his motion for new trial.

Mr. Roy asserts the trial court erred in denying his special motion to strike; he seeks an award of attorney fees and costs as provided in La.Code Civ.P. art. 971(B).

## DISCUSSION

*No Cause of Action*

Mr. Jeansonne contends that the trial court erred in granting Mr. Roy's exception of no cause of action. The exception of no cause of action "tests the legal sufficiency of pleadings detailed in the petition." *Perritt v. Dona*, 02-2601, 02-2603, p. 16 (La. 7/2/03), 849 So.2d 56, 66. When determining whether a petition states a cause of action, a court must accept the well-pleaded allegations of fact in the petition as true and cannot consider any extraneous supporting or controverting evidence. La.Code Civ.P. art. 931; *Credit v. Richland Parish Sch. Bd.*, 11-1003 (La. 3/13/12), 85 So.3d 669.

The issue to be addressed is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.,* 10-2264 (La. 5/10/11), 63 So.3d 940. Louisiana employs fact pleading; therefore, conclusory allegations unsupported by facts do not set forth a cause or right of action. La.Code Civ.P. art. 854, official revision comment (a); *Infinity,* 63 So.3d 940.

In his Petition, Mr. Jeansonne alleges that Mr. Roy's actions in this litigation caused him damage. When acting on a client's behalf, an attorney in Louisiana does not owe his client's adversary a legal duty, and he cannot be held liable to the non-client for malpractice or negligent breach of a professional obligation to the non-client. The attorney can only be held liable to his client's adversary if he

4

commits an intentional tort against the adversary. *Montalvo v. Sondes*, 637 So.2d 127 93-2813 (La. 5/23/94); *Penalber v. Blount*, 550 So.2d 577 (La.1989).

In *Montalvo*, 637 So.2d at 130 (citation omitted), the supreme court explained how limited legitimate claims against the attorney of one's adversary are:

> [T]he mere filing of a lawsuit, even if the suit appears meritless on its face, is not enough, since the attorney may be simply the instrument through which the client invokes judicial determination. Rather, we believe it is essential for the petition to allege facts showing specific malice or an intent to harm on the part of the attorney in persuading his client to initiate and continue the suit.

The petition must allege facts that establish the attorney "intended to cause direct harm" to the non-client by taking the action at issue. *Id.*

Mr. Jeansonne's allegations against Mr. Roy state, in pertinent part:

VIII.

> That during the discussion, Judge William J. Bennett asked if the Coroner L.J. Mayeaux was "in the loop" on the exhumation/disinterment/autopsy request and was told by Cory P. Roy that the coroner "was in the loop" thus giving the impression the action was "officially" sanctioned by the coroner. . . .

. . . .

X.

> That Cory P. Roy knew or should have known that the only "appropriate authority" to exhume, disinter and autopsy the body was [the] duly elected coroner of Avoyelles Parish pursuant to La. C.Cr.P. Art. 102 and/or La. R.S. 33:1563.

XI.

> That Cory P. Roy knew or should have known that in order to move the remains the law required that permission be obtained from both the cemetery authority and the parents of a decedent who did not leave written directions and had no surviving spouse or surviving adult children.

5

## XII.

That Cory P. Roy intentionally did not attempt to obtain the permission of petitioner and thus deprived him of an opportunity to file an objection to his beloved daughter's final resting place being disturbed.

These alleged facts do not establish that Mr. Roy intended to cause Mr. Jeansonne direct harm. Therefore, the petition fails to state a cause of action against Mr. Roy, and the trial court did not err in granting Mr. Roy's exception.

### *Summary Judgment*

Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *La. Safety Ass'n of Timbermen-Self Insurers Fund v. La. Ins. Guar. Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof is on the movant to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, he need not "negate all essential elements of the adverse party's claim," but he must show "there is an absence of factual support for one or more elements essential to the adverse party's claim." *Id*. Once

the movant has met his initial burden of proof, the burden shifts to the adverse party "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.*

Mr. Jeansonne alleged in his Petition that Escude acted improperly because La.Code Crim.P. art. 102 requires that autopsies be performed by coroners. Escude contends Mr. Jeansonne failed to state a cause of action against it because 1) La.R.S. 8:660(3)[1] provides that disinterment may be performed "pursuant to an order or a court of competent jurisdiction or a coroner of the parish in which the cemetery is located" and 2) it disinterred Morgan's remains pursuant to an order issued by a court of competent jurisdiction.

Louisiana Revised Statutes 8:650-663 contains restrictions and prohibitions to protect the sanctity of human remains. Section 660 excepts certain actions from those restrictions and prohibitions and allows the disinterment of remains when a court of competent jurisdiction orders the disinterment. Mr. Jeansonne does not dispute that the trial court had jurisdiction to issue the Order.

Article 102 requires coroners to perform an autopsy when death occurred under specific circumstances which include "[w]hen there is a reasonable

---

[1]Louisiana Revised Statutes 8:660 provides:

> The foregoing Sections shall not apply to or prohibit the following:
> (1) The rearrangement of remains within the same cemetery space by or with the consent of the cemetery authority for the purpose of rearrangement or reuse in cemeteries which allow for rearrangement or reuse as defined in R.S. 8:1(36.1).
> (2) The removal of remains by a cemetery authority from a cemetery space for which the purchase price or any other legitimate indebtedness to the cemetery authority is past due and unpaid, to some other suitable place.
> (3) The disinterment of remains pursuant to an order of a court of competent jurisdiction or of a coroner of the parish in which the cemetery is located.
> (4) The removal and transfer of remains to correct an error as provided in R.S. 8:813 provided that written notice shall be sent to the immediate family prior to the removal and transfer.

probability that the violation of a criminal statute has contributed to the death" and "[w]hen ordered by the court . . . or on application by the district attorney." It also allows coroners to "perform an autopsy in any death case or cause one to be performed by a competent physician."

Escude disinterred Morgan's remains; it did not perform an autopsy on her. Article 102 does not conflict with La.R.S. 8:660 and does not affect the validity of the Order. Specifically, Article 102 does not prohibit a court of competent jurisdiction from ordering a competent physician, other than a coroner, to perform an autopsy in circumstances other than those enumerated therein. Therefore, it does not render Escude's actions negligent or actionable.

Mr. Jeansonne also argues the following are genuine issues of material fact which preclude summary judgment:

> 1) whether his ex-wife was the appropriate party to exhume Morgan's body;
>
> 2) whether his ex-wife was authorized to serve the order ordering the Morgan's body be exhumed;
>
> 3) whether Escude received a certified copy of the order;
>
> 4) whether Escude contacted him, as owner of Morgan's crypt, before opening it;
>
> 5) whether Escude's representatives admitted the order was not legally binding on the company.

Mr. Jeansonne has not cited authority in support of the proposition that when a court of competent jurisdiction orders exhumation, he is the only legally authorized party to exhume Morgan's remains. He also has not established that for an order to be valid and enforceable, it must be certified and served by a particular person or agency, and our research has not revealed any basis for either of these claims. Therefore, Mr. Jeansonne has not proven that Escude could have refused

8

to obey the trial court's order without legal consequence. Accordingly, even if Escude representatives stated they did not believe the trial court's order was enforceable, their statements did not create a genuine issue of material fact.

For these reasons, Mr. Jeansonne has not shown the existence of genuine issues of material fact which preclude summary judgment, and Escude is entitled to summary judgment. Accordingly, the judgment of the trial court granting summary judgment in favor of Escude and dismissing Mr. Jeansonne's claims against it is affirmed.

### *Motion for New Trial*

Mr. Jeansonne's sole basis for seeking a new trial was that Escude's representative provided false statements in his affidavit supporting Escude's motion for summary judgment. Specifically, the representative stated that the priest in charge of the cemetery where Morgan is buried was contacted before Escude complied with the Order. Mr. Jeansonne supports his argument with the affidavit of the priest in charge of the cemetery. He argues that to allow a false statement to serve as the basis for summary judgment would result in a miscarriage of justice.

Mr. Jeansonne has not shown that notice must be given to the cemetery authority or that permission of the cemetery authority is required before a court order ordering disinterment can be obeyed. Therefore, the false statement that the priest's permission was obtained before complying with the Order does not create a material issue of fact that prevents summary judgment, and the trial court did not err in denying Mr. Jeansonne's motion for new trial.

9

*Special Motion to Strike*

Mr. Roy appealed the trial court's denial of his La.Code Civ.P. art. 971 special motion to strike; he argues the trial court erred in finding that the purpose of the motion is to protect free speech.

The denial of a special motion to strike presents a question of law that we review to determine whether the trial court was legally correct or incorrect. *Savoie v. Page*, 09-415 (La.App. 3 Cir. 11/4/09), 23 So.3d 1013, *writ denied*, 10-96 (La. 4/5/10), 31 So.3d 365.

Louisiana Code Civil Procedure Article 971(A)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

Article 971(F)(1)(a) defines an "[a]ct in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" to include "[a]ny written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." Article 971 was passed to curb "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances." Section 2 of Acts 1999, No. 734. The legislature specifically noted its intention that Article 971 "shall be construed broadly" to insure "continued participation in matters of public significance." *Id.* The special motion to strike applies to allegations made in pleadings by attorneys on behalf of their clients to protect their clients' right to free speech, and it is not limited only to actions involving free

10

speech. *In re Succ'n of Carroll*, 46,327 (La.App. 2 Cir. 7/20/11), 72 So.3d 384; *Thinkstream, Inc. v. Rubin,* 06-1595 (La.App. 1 Cir. 9/26/07), 971 So.2d 1092, *writ denied,* 07-2113 (La. 1/7/08), 973 So.2d 730.

The statements at issue here were written statements Mr. Roy "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" and fall under Subsection (F)(1)(a) of Article 971. *In re Succ'n of Carroll*, 72 So.3d 384. Therefore, the allegations are subject to Mr. Roy's motion to strike, unless Mr. Jeansonne can establish that he will probably succeed on his claims against Mr. Roy. La.Code Civ.P. art. 971 (A)(1).

We look to the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based to determine the likelihood of Mr. Jeansonne succeeding on his claims against Mr. Roy. *Thinkstream*, 971 So.2d 1092. Mr. Jeansonne relies solely on his pleadings to oppose Mr. Roy's motion to strike. His claims against Mr. Roy are based on the allegations contained in the Motion for Ex Parte Order that Mr. Roy filed on behalf of Ms. Jeansonne. Thus, the pleadings are written statements made before a judicial proceeding and fall within the definition of "[a]n act in furtherance of the person's right of petition or free speech[.]" La.Code Civ.P. art. 971(F)(1)(a).

Mr. Jeansonne's allegations against Mr. Roy do not establish that Mr. Roy intended to "cause direct harm" to Mr. Jeansonne, as required by *Montalvo*, 637 So.2d at 130. Therefore, he has not carried his burden of proving that he will likely succeed at trial on his claims against Mr. Roy, and the trial court erred in not granting the special motion to strike. The trial court's judgment denying Mr. Roy's motion to strike is reversed.

11

*Attorney Fees*

Mr. Roy seeks an award of reasonable attorney fees and costs against Mr. Jeansonne pursuant to La.Code Civ.P. art. 971(B), which provides that reasonable attorney fees and costs shall be awarded to a party who is successful on a motion to strike. Accordingly, we award $2,500 in attorney fees to Mr. Roy and assess all costs to Mr. Jeansonne.

## DISPOSITION

The judgments of the trial court granting summary judgment in favor of Escude, denying Mr. Jeansonne's motion for new trial, and granting Mr. Roy's exception of no cause of action are affirmed. The trial court's judgment denying Mr. Roy's motion to strike is reversed, and Mr. Roy is awarded $2,500 in attorney fees. Mr. Jeansonne is assessed with all court costs.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

CHET DAVID JEANSONNE

VERSUS

CORY PAUL ROY, ET AL.

**CONERY, J., dissents and assigns reasons.**

In this highly unusual suit against an attorney and a funeral home for allegedly improperly orchestrating an exhumation of the body of plaintiff's daughter for an autopsy, the majority affirms the trial judge's grant of an Exception of No Cause of Action against the attorney. The attorney obtained an Ex Parte Order for the Exhumation by misleading the trial judge into believing that the coroner had approved the exhumation request. The majority also reverses the trial judge's denial of the defendant attorney's Motion to Strike the allegations against him and awards attorney's fees against plaintiff, Mr. Jeansonne. The majority further affirms a summary judgment in favor of the funeral home, whose employees actually had the remains disinterred, brought the remains to a hospital for an autopsy, and then reinterred the remains, all allegedly without the permission of the owner of the cemetery or the coroner and without notice to the plaintiff, who had paid for the funeral services, the casket, the crypt and the burial of his eighteen year old daughter, Morgan. For the following reasons, I dissent.

*Exception of No Cause of Action*

In this case, a grieving mother, Sharleen Jeansonne, sought to exhume the body of her daughter, Morgan Jeansonne, whose self-inflicted fatal gunshot wound

had been ruled a suicide by the coroner.  At the time, Morgan was eighteen and had been living with her father for some time.  At some point, Mrs. Jeansonne began to suspect for some unknown reason not contained in the record that her ex-husband murdered their daughter.  She wanted to exhume Morgan's body for an autopsy.  After the coroner denied Mrs. Jeansonne's request to exhume the body, she hired Mr. Roy, who obtained an Ex Parte Court Order to exhume the body for purposes of autopsy without notifying the coroner or due process notice to the equally grieving former husband and father, plaintiff, Chet Jeansonne.

Mr. Jeansonne sued Mr. Roy for intentional infliction of emotional distress, claiming that Mr. Roy filed an Ex Parte "Motion to Exhume and/or For the Disinterment of Remains for Autopsy Purposes Pursuant to La.R.S. 8:660" with an attached Order.  The Order is in the record, but not the Motion. The trial court granted an exception of no cause of action, but allowed the plaintiff to amend his suit. He did and the trial court dismissed the lawsuit against the attorney finding no facts had been alleged that would support a finding that Mr. Roy intentionally took action that he knew would cause direct harm to Mr. Jeansonne.

The majority affirmed and correctly summarizes much of the pertinent law applicable to this case.  Some additional observations are in order to better illuminate the issues discussed in dissent.

### Exhumation of Body

It is especially important to recognize that this case must be decided in light of long standing precedent that "exhumation of a body is not favored in the law and is against public policy, except in cases of necessity for laudable purposes." *Spiess v. Greenwood Develop. Co. Inc.*, 542 So.2d 810 (La. App. 3 Cir. 1989). These exact words date back to the seminal supreme court case of *Choppin v.*

*Labranche*, 48 La.Ann. 1217 (1896), which stated:

> The disturbance of the remains of the dead, except for lawful necessary purposes, is not encouraged. With due regard to the sentiment on that subject, as well as public policy, courts have enjoined disinterments…To disturb the mortal remains of those endeared to us in life sometimes becomes the sad duty of the living. But, except in cases of necessity, or for laudable purposes, the sanctity of the grave should be maintained.

As Justice Cardozo stated in *Yome v. Gorman*, 242 N.Y.395, 403, 152 N.W. 126, 129 (1926), "The dead are to rest where they have laid unless reason of substance is brought forward for disturbing their repose."

In order to disinter remains, La.R.S. 8:659 requires, in pertinent part, the consent of the cemetery authority **and** written consent of one of the following:

(3) The surviving **parents**

If the required consent cannot be obtained, a **final judgment** of the district court of the parish where the cemetery is situated **shall** be required. The statute obviously contemplates an ordinary proceeding, with notice and due process, not a summary, Ex Parte proceeding.

Louisiana Revised Statutes 8:660 was cited by Mr. Roy in defense of the claim. He argues the exception to La.R.S. 8:559 in La.R.S. 8:660(3) applies, and allows for the disinterment as follows, "(3) The disinterment of remains pursuant to an **order of a court of competent jurisdiction** or **of a corner of the parish in which the cemetery is located.**" La.R.S. 8:660 (emphasis added). He argues he lawfully obtained a Court Order and had no duty to Mr. Jeansonne, his adversary.

Mr. Roy, as an attorney, knew that there would have been no need for a court order if the coroner had approved Mrs. Jeansonne's request for exhumation, as the coroner had the authority to order the exhumation under La.R.S. 8:660(3). The coroner had already denied the request. Hence Mr. Roy had to intentionally

seek an Ex Parte Court Order as he knew both the coroner and Mr. Jeansonne would oppose the request. Mr. Roy knew that his intentional actions would cause direct harm to Mr. Jeansonne and Mr. Jeansonne alleged that the exhumation, autopsy, and disinterment did cause extreme emotional distress to him.

*Exception of No Cause of Action - Attorney's Liability to a non-client adversary for intentional acts.*

As the majority correctly sets forth in its opinion, under Louisiana law attorneys may be liable to a non-client adversary if it can be shown there was intent to harm. The lead case on this issue discussed by the majority is *Penalber v. Blount*, 550 So.2d 577, 582 (La.1989), which states with regard to the allegations of fact contained in the plaintiff's petition in that case:

> Instead, it alleges intentional, even calculated, misconduct performed for both Connelly and his client's benefit, causing direct harm to the adverse litigant. Intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of LSA-C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct.
> . . . .
> The basic difference between an intentional tort and a negligent act is briefly explained in *Bazley v. Tortorich,* 397 So.2d 475 (La.1981). A more recent treatment of the subject matter is found in *Caudle v. Betts,* 512 So.2d 389 (La.1987). Numerous authorities and commentaries are cited and the opinion notes:
>
>> The intent with which tort liability is concerned is not necessarily a *hostile intent, or a desire to do any harm*. Restatement (Second) of Torts, American Law Institute § 13, (comment e) (1965). *Rather it is intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although ... honestly believing that the act would not injure the plaintiff....* W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed. 1984). (Emphasis added.)

The majority acknowledges *Penalber*, but quotes *Montalvo v.* Sondes, 93-2813 (La. 5/23/94), 637 So.2d 127, 130, and would require the plaintiff to allege facts that the attorney "intended to cause direct harm" to the non-client by taking the action at issue. *Montalvo*, however, re-affirmed the supreme court's earlier holding in *Penalber*. The question then becomes did the petition and amending petition allege sufficient facts from which a reasonable inference could be made of intent to harm by the attorney.

Intent can only be proven by circumstantial evidence. Allegations of the petition must set forth facts, which if proven true at trial, set forth a cause of action in tort under the law. We must consider the petition in a light most favorable to the non-moving party and must consider how the law applies to the issue at hand. The non-moving party is entitled to all reasonable inferences arising from the facts alleged. *City of New Orleans v. Bd. Of Comm'rs of Orleans Levee Dist.*, 93-690 (La. 7/15/94), 640 So.2d 237.

From reviewing a copy of the record, the petition and amending petition allege intentional acts by Mr. Roy from which the following reasonable inferences may be made:

1.  Morgan Jeansonne, the couple's youngest daughter, was eighteen at the time of the incident and had been living in Mr. Jeansonne's home for some time prior to her death.

2.  Morgan Jeansonne died as a result of a self-inflicted gunshot wound and the coroner ruled she committed suicide.

3.  Mr. Jeansonne arranged for Morgan's funeral, bought a casket, paid Escude Funeral Home for her funeral services, and bought a crypt in the

cemetery where Escude completed the burial. Morgan's remains were interred in a mausoleum at St. Paul's Catholic Church Cemetery in Mansura, Louisiana, in Avoyelles Parish, some eleven miles from Marksville, La. The mausoleum is owned by St. Paul's Catholic Church and Father Partain was the pastor.

4.     Sharleen Jeansonne suspected for some unknown reason unsupported by any evidence in the record that Morgan had been murdered by her father, her ex-husband Chet Jeansonne. She asked the coroner to exhume the body and conduct an autopsy. The coroner refused her request.

5.     Mrs. Jeansonne hired Cory Paul Roy, Jr. to assist her in accomplishing the exhumation and autopsy. Mr. Roy has been practicing law since 2000 (according to the public records of the Louisiana State Bar Association) and therefore is an experienced attorney. Notice and Due Process issues are not novel or confusing concepts.

6.     Mr. Roy filed a highly unusual Ex Parte Motion and Order to exhume Morgan's body with the Clerk of Court, and it was randomly allotted to Judge Bennett, who was not immediately available to sign the Order. (Uniform Rules-District Courts, Rule 9.4) The Order is in the record, but the Motion in Support of the Order is not. There is no mention of a memorandum, which should have been attached to the Motion and no affidavit showing exigent circumstances. Uniform Rules–District Courts, Rule 9.9.

7.     After the case was allotted to Judge Bennett, Mr. Roy approached Judge Jeansonne in chambers ex parte. There is nothing in the record to support the proposition that Mr. Roy had made an attempt to call or notify

Mr. Jeansonne, or any attorney who might have previously represented Mr. Jeansonne, that he was seeking an ex parte order to exhume the body of the couple's daughter, Morgan Jeansonne. Mr. Roy was obligated under the Uniform Rules–District Courts, Rule 9.8, to contact counsel for Mr. Jeansonne or Mr. Jeansonne personally to explain he was seeking an Ex Parte Order. Mr. Roy then violated the Louisiana Rules of Professional Conduct by misleading the Judges by assuring them that the order was approved by the coroner.[1] He was not candid with the tribunal and, to the contrary, intentionally mislead Judges Bennett and Jeansonne.

8. Mr. Roy is charged with knowing that Uniform Rules–District Courts, Rule 9.8 requires that all Motions must be accompanied by an Order and will not be scheduled until at least fifteen days after filing. The exception to Rule 9.8, is an Ex Parte Motion, which must be (1) unopposed; (2) motions where all parties have been joined; or (3) permitted by law or these Rules to be decided ex parte. None of these exceptions applied to this case.

9. Louisiana Code of Civil Procedure Article 963 specifically allows an Ex Parte Motion to be granted without hearing if the order sought by "written motion is one which the mover is clearly entitled without supporting proof." If the order is "one to which the mover is not clearly entitled, or which requires supporting proof, the motion *shall be served on and tried contradictorily with the adverse party.*" (Emphasis added.) As an attorney, Mr. Roy is charged with knowledge of this particular provision of our law.

---

[1] Louisiana Rules of Professional Conduct, Rule 3.3(A)(1) Candor Toward the Tribunal – "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

10. Court Orders setting a show cause hearing must be filed with the Clerk of Court, whose personnel normally would present the Order to the allotted Judge or duty Judge for signature. There is no necessity for an attorney to "walk the order through." From the facts alleged, it can reasonably be inferred that Mr. Roy intended to try to get the Judge to sign an Ex Parte Order granting relief without a hearing. Otherwise he would have simply left the Order with the Clerk for the Judge to set a show cause hearing and would not have included an Ex Parte request in the Order.

11. A request for exhumation is highly unusual and not something to be taken lightly. Louisiana jurisprudence recognizes a long standing public policy against exhuming bodies. Mr. Roy knew that the coroner was the proper party to request an exhumation[2] and should have been notified of the request

12. Since the Motion is not in the record, there is no evidence whatsoever that there were exigent circumstances requiring an Ex Parte Order, and likewise no sworn affidavit in support of any allegations that may have been made.

13. Judge Jeansonne was apparently asked to sign the order ex parte, otherwise, there would have been no need to present the Order to Judge Jeansonne or for Judge Jeansonne to call the allotted Judge Bennet.

14. It can reasonably be inferred that at Mr. Roy's request, Judge Jeansonne then called Judge Bennett about whether he should sign this highly unusual Ex Parte Order, or set it for show cause hearing. Had a

_____

[2] La.R.S. 13:5713; La.R.S. 8:660(3).

show cause hearing been scheduled, the coroner and Mr. Jeansonne would have been served. Judge Bennett then specifically asked whether the coroner "was in the loop." Mr. Roy intentionally misled Judges Bennett and Jeansonne, falsely inferring the coroner had approved the request. If the coroner had in fact approved the exhumation request, the coroner had the authority to Order the exhumation under La.R.S. 8:660, and there would have been no necessity for a Court Order.

15.    The pleadings and order had no typed service information, circumstantial evidence that Mr. Roy was seeking an Ex Parte Order and did not intend to afford notice and due process before proceeding with the requested exhumation. Mr. Roy hand wrote service information on the order after it was signed. The order was filed with the Clerk with no request for expedited service. The Order was presented on Friday and the autopsy was done the same day. The body was re-interred Saturday, and Mr. Jeansonne wasn't served until Monday, too late to object.

16.    The Order was extremely vague and stated that the "appropriate authority" was to exhume the body. Sharleen Jeansonne personally hand carried a copy of the order to Escude Funeral Home, even though Escude had not been named as the "appropriate authority" in the Ex Parte Order and had not been directed to exhume the body. Mrs. Jeansonne allegedly demanded that the funeral home immediately exhume the body. The funeral director honored her request, even though the Order was not directed to Escude Funeral Home. The Order was vague, at best, because even though the funeral home may be an "appropriate authority" to actually carry out an Exhumation Order, the coroner is the "appropriate authority" to

*authorize* exhumation. La.R.S. arts. 13:5713(B)(2) and 8:660(3).

17.    Ira Escude signed an affidavit in support of Escude's Motion for Summary Judgment wherein he stated that he had over thirty years of experience as a funeral director. Mr. Escude knew Mr. Jeansonne and knew that Mr. Jeansonne paid for the funeral services, the casket and the crypt in which Morgan was buried, yet he made no attempt to notify Mr. Jeansonne before carrying out this vague Order on a Friday. It can reasonably be inferred and concluded that Escude's obligation was to its' client, Mr. Jeansonne, and to the sanctity of the final resting place of Morgan.

18.    A crew working for Escude Funeral Home was somehow immediately able to accompany Mrs. Jeansonne and Mr. Escude to the grave site eleven miles away in Mansura. Escude had a transport vehicle immediately available to bring the remains to a hospital in Alexandria, Rapides Regional Medical Center, some thirty-three miles from Mansura.

19.    Somehow personnel at Rapides Regional Medical Center were immediately available to receive the body and arrange for a room and the necessary equipment for the autopsy to be performed. The physician who did the autopsy was also immediately available to perform the autopsy at the hospital. Individuals employed by Escude were then available to return Morgan's body to the funeral home where it was kept overnight, and then re-inter the body the next day on Saturday.

20.    St. Paul's Catholic Church was the owner of the cemetery. Mr. Ira Escude stated in his affidavit in support of Escude's summary judgment motion that the priest in charge of the cemetery had been contacted and had approved of the request to open the tomb and remove the body. Father

Partain, pastor at St. Paul's Church, signed a countervailing affidavit introduced at the plaintiff's Motion for New Trial hearing that he was the person responsible for the cemetery and that no one had contacted him or notified him of this highly unusual request.

How does one prove intent? Intent can only be proved by circumstantial evidence. In this case, reasonable inferences from the allegations of the petition and the record support a finding that Mr. Roy actively and intentionally helped his client orchestrate this whole scenario, and was able to accomplish it by intentionally misleading the Judges to improperly grant an Ex Parte Order.

Mr. Roy's actions clearly establish that he intentionally obtained the Ex Parte Order of Exhumation knowing full well that his actions would result in substantial injury to Mr. Jeansonne's psyche and would cause him extreme emotional distress.

Counsel for Mr. Roy has raised the question of whether Mr. Roy had the **specific intent** to directly harm Mr. Jeansonne or intentionally inflict mental anguish on him? This is a tort case filed under La.Civ.Code art 2315, not a criminal proceeding. Mr. Roy clearly had the specific intent to take the actions that he took, and he clearly knew that his actions would result in serious emotional suffering by Mr. Jeansonne. If he had thought otherwise, he would have **acted** differently and simply filed a show cause Order with notice and due process safeguards. *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So.2d 1017, *Penalber v. Blount*, 550 So.2d 577 (La.1989), *Miller v. Mier*, 04-992 (La.App. 3 Cir. 11/10/04), 887 So.2d 157 (unpublished opinion). The facts in *Penalber* and its holding are directly on point in this case.

Through alleged contrivance and subterfuge, Morgan's final resting place

has been disturbed and her body desecrated, allegedly resulting in extreme emotional distress to her father, plaintiff, Chet Jeansonne. A cause of action has been stated. I would reverse the trial court's grant of the Exception of No Cause of Action and remand for further proceedings.

### *Summary Judgment*

For the same reasons outlined in the discussion under no cause of action, Summary Judgment in favor of Escude was improper and pre-mature. Discovery had not yet begun. Already numerous factual issues and inferences from those facts have been raised in connection with the strange and unusual set of circumstances leading to the immediate exhumation, autopsy and re-interment of Morgan's remains.

Mr. Ira Escude's statement of facts in his sworn affidavit that the owner of the cemetery had approved of the exhumation request was directly contradicted by Father Partain. Mr. Escude's statement to Mr. Jeansonne, as set forth in Mr. Jeansonne's affidavit introduced at the summary judgment proceeding, that Mr. Escude was pressured into co-operating with Sharleen Jeansonne and that she had threatened Escude with a lawsuit if he did not co-operate and exhume the body raises more questions as to Escude's role than it answers. Escude's duty was to its client, Mr. Jeansonne, and to preserving the integrity of Morgan's remains. A reasonable inference can be made that Escude appeared only too willing to help Mrs. Jeansonne. Future discovery may show the extent of Escude's active involvement. Too many coincidences usually mean that someone is being untruthful. Credibility decisions cannot be made on summary judgment.

Especially in light of Louisiana's strong public policy against exhumation, Mr. Jeansonne deserves his day in Court. I would reverse the Summary Judgment

and the Motion to Deny the new trial on this issue. At the very least, summary judgment is premature, as no discovery has yet taken place and "the law does require that the parties be given a fair opportunity to present their case." *Simon v. Bellaire*, 11-442, p.3 (La.App. 3 Cir 10/5/11) 74 So.3d 1250, 1252, *writ denied*, 11-2454 (La. 2/3/12), 79 So.3d 1027.

### *Motion to Strike*

The majority reverses the trial court's denial of Mr. Roy's motion to strike and found that La.Civ.Code art. 971 did apply to Mr. Roy under the circumstances of this case, and he was entitled to attorney's fees. I disagree with the majority on this issue. By reversing the trial court's grant of the exception of no cause of action against the defendant attorney Mr. Roy, Roy's Motion to Strike and request for attorney's fees must be denied.

### CONCLUSION

I dissent and would reverse the Exception of No Cause of Action filed by Mr. Roy and remand for further proceedings on this issue. Mr. Jeansonne has stated a cause of action against Mr. Roy. I would affirm the trial court's denial of Mr. Roy's Motion to Strike and deny his request for attorney's fees.

Material issues of fact exist as to the knowledge and participation of the funeral home personnel, Mr. Roy and Mrs. Sharleen Jeansonne. I would reverse the trial judge's grant of Summary Judgment in favor of Escude and reverse the denial of plaintiff's new trial motion at this juncture. No discovery has been undertaken. Louisiana's strong public policy against exhumation is on Mr. Jeansonne's side. Summary Judgment is premature.

I would assess all costs of this appeal against Mr. Roy and Escude.