GUIDRY, Justice.
_jjWe granted the State of Louisiana’s writ application to determine whether the lower courts erred in sustaining the defendants’ exceptions of no cause of action and dismissing the State’s suit with prejudice. For the reasons set forth below, we reverse the rulings of the lower courts and remand the case to the district court for further proceedings.
FACTS
Because this case concerns review of a ruling on an exception of no cause of action, we begin as we must with the allegations asserted in the State of Louisiana’s Petition for Damages and Forfeiture of Bid Security (hereinafter, “petition”), accepting them as true for the purpose of ruling on the exception of no cause of action. See Scheffler v. Adams and Reese, L.L.P., 06-1774 (La.2/22/07), 950 So.2d 641. The State of Louisiana, through its Division of Administration, Office of Facility Planning and Control, on or about May 29, 2008, issued a Project Manual and Bid Specifications (hereinafter, “project manual”) to remove and replace existing cabins at Bayou Segnette State Park, Jefferson Parish, Westwego, Louisiana (hereinafter, “project”).
1 Recording to the petition, the “Advertisement for Bids” section of the project manual provided, in pertinent part:
All bids must be accompanied by bid security equal to five percent (5%) of the sum of the base bid and all alternates, and must be in the form of a certified check, cashier’s check, or Facility Planning and Control Bid Form written by a surety company licensed to do business in Louisiana, signed by the surety’s agency or attorney in fact. Surety must be listed on the current U.S. Department of the Treasury Financial Manage *942 ment Service list of approved bonding companies as approved for an amount equal to or greater than the amount for which it obligates itself in the Bond, or must be a Louisiana domiciled insurance company with at least an A-rating in the latest printing of the A.M. Best’s Key Rating Guide.
The project manual included a Facility Planning and Control Bid Form (hereinafter, “bid form”), which set forth the procedure and conditions for the submission of bids for the project. According to the petition, the bid form provided, in pertinent part:
If the Bidder is notified of the acceptance of the bid within thirty (30) days after the opening of bids, he agrees to execute and deliver the “Contract Between Owner and Contractor and Performance and Payment Bond,” a copy of which is attached to the Contract Documents, within ten (10) days after notice from the Owner that the instrument is ready for signature.
If the Bidder fails to complete all requirements for executing the “Contract Between Owner and Contractor and Performance and Payment Bond” within ten (10) days after notifications, the Owner may reject the Bid, retain the Bid Bond, call in the surety for payment, and award the contract to the next lowest bidder.
[[Image here]]
Bid Security: Attached is the bid security in the sum of 5% of total base bid and all alternates. The bid security is to become the property of the Owner in the event the Contract and bond are not executed within the time set forth, as Liquidated Damages for the delay and additional work caused thereby.
The petition alleges the State opened the sealed bids for the project on or about July 9, 2008. Beneteeh, L.L.C., and JRDKS Construction, L.L.C., A Joint Venture (hereinafter, “Joint Venture”), submitted the lowest bid for the project.
|3The petition alleged the bid bond attached to Joint Venture’s bid was signed by both Joint Venture and Infinity Surety Agency, L.L.C. (hereinafter, “Infinity Surety”). According to the petition, the bid bond provided in pertinent part:
Surety represents that it is listed on the current U.S. Department of the Treasury Financial Management Service list of approved bonding companies as approved for an amount equal to or greater that the amount for which it obligates itself in this instrument or that it is a Louisiana domiciled insurance company with at least an A- rating in the latest printing of A.M. Best’s Key Rating Guide.
The State claims it relied on the representations of both Infinity and Joint Venture in the bid bond, stating that Infinity Surety was qualified to write bid bonds, when on July 18, 2008, it accepted Joint Venture’s bid by sending contract documents to Joint Venture to execute and return.
According to the petition, the bid form required the lowest responsible and responsive bidder to execute the contract and return it along with a performance and payment bond, which was to be governed by La.Rev.Stat. 38:2219.[1] Joint *943 Venture selected Infinity Surety for the required performance and payment bond. At this point, the State’s petition claims, it discovered that Infinity Surety did not meet any of the requirements of either La.Rev.Stat. 38:2219, or the bid specifications, in terms of being qualified to write surety bonds on public works projects. The State’s petition asserts it refused to accept Infinity Surety’s improper performance and payment bond. But, despite the fact that the bid form requires Joint Venture to deliver both the properly executed “Contract Documents and |4Performance and Payment Bond” to the State -within ten (10) days of receipt, the petition alleges the State, in good faith, negotiated for approximately four months with Joint Venture in an attempt to have Joint Venture deliver an acceptable performance and payment bond.
The petition alleges that on November 3, 2008, “due to the failure of Joint Venture to provide an acceptable performance and payment bond within the extended time frame,” the State notified both Joint Venture and Infinity Surety that the bid bond was forfeited, and that the State would be moving on with the project. Thereafter, the State’s petition claims it was forced to rebid the project and to enter into a public works contract with another contractor for a higher price than its original bid with Joint Venture.
The State filed its petition on April 15, 2009, against Joint Venture, Infinity Surety, Beneteeh, L.L.C., and JRDKS Construction, L.L.C. The petition asserts the defendants are liable to the State for the following:
1.Failing to comply with the requirements of the Project Manual and Bid Form regarding the requirements for acceptable bonds;
2. Misrepresenting to the State that Infinity Surety was qualified to write surety bonds on Louisiana public works projects;
3. Failing to tender to the State $121,767.90, which represents the amount of Joint Venture’s Bid Bond.
The State’s petition claims it suffered damages as a result of the defendants’ conduct, including, but not limited to:
1. Costs necessary to rebid project including administrative expenses;
2. Delay damages for the four months the project was delayed while Joint Venture attempted to procure acceptable Payment and Performance Bond;
3. Difference in price between Joint Venture’s bid and bid ultimately accepted for the project;
4. Attorney’s fees, expenses, and court costs;
5. Any and all damages as may be proven at trial.
| fiThe petition further alleges that Infinity Surety, as “Surety,” and Beneteeh, L.L.C., and JRDKS Construction, L.L.C., A Joint Venture, as “Contractor,” are liable to the State for these damages. Additionally, the petition asserts, JRDKS Construction L.L.C., and Beneteeh, L.L.C., as the two entities of which the former Joint Venture comprised, are individually liable to the State for the above damages in the event Joint Venture is no longer in existence.
*944 PROCEDURAL HISTORY
Benetech, Joint Ventare, and Infinity Surety filed peremptory exceptions of no cause of action alleging the State’s petition fails to state a cause of action upon which relief can be granted. In the exceptions, the defendants contended Joint Venture’s bid was non-responsive and, therefore, the State should have rejected Joint Venture’s bid and awarded the contract to the next lowest responsible bid, rather than to Joint Venture. The defendants argued the State’s right to retain the Bid Bond as liquidated damages was conditioned on the successful bidder failing to execute the contract within a specified period of time. Here, the defendants asserted the State, as the public entity, was required to comply with the applicable bid law, which the State failed to do. The defendants argued the State was prohibited by the public bid law, La.Rev.Stat. 38:2212, from awarding the contract to Joint Venture, because Joint Venture had failed to comply with the advertised bid specifications and, thus, was not a responsive bidder. Essentially, the defendants argued the State should not have relied on their assertions in the bid form that Infinity Surety was an authorized surety and, thus, it was the State’s eiTor for awarding the contract to Joint Venture. Additionally, the defendants argued, citing La.Rev.Stat. 38:2212(A)(l)(b), the State was prohibited from waiving any deficiencies in the bid, so as to transform a non-responsive bid into a responsive bid.
|r,The State responded that its petition asserts three causes of action: breach of contract, intentional misrepresentation, and negligent misrepresentation. The bid form itself, the State argued, established the contractual agreement between the parties. The State contended Joint Venture was required by the bid form to return the executed contract and a proper performance and payment bond within ten days of being awarded the contract, and the failure to do so could result in forfeiture of the bid bond. The State pointed out that the petition specifically alleges facts to support a breach of contract claim. The State argued the defendants cannot prevail on an exception of no cause of action by asserting defenses to the claims, arguing that the Joint Venture bid was responsive, that Joint Venture and Infinity Surety cannot hide behind their intentional misrepresentations, that Infinity Surety had guaranteed payment under terms of the bid bond, and that Infinity Surety, even as an unauthorized insurer, could not void its obligation under the bid bond, citing La.Rev.Stat. 22:1256.
With regard to intentional misrepresentation, the State contended it alleged facts to support the two elements essential to establishing a cause of action for intentional misrepresentation: an intent to defraud or gain an unfair advantage and a resulting loss or damage. The petition alleges both Joint Venture and Infinity Surety represented in the bid form that the latter was an authorized surety, that the State relied on these representations, and the State was ultimately forced to rebid the project when Joint Venture could not provide a proper performance and payment bond. Similarly, the State argued the petition asserts sufficient facts to support a claim of negligent misrepresentation, which is determined under a duty-risk analysis.
In its oral reasons for granting the exceptions, the district court found the State had failed to state a cause of action. According to the trial judge, Infinity 17Suretys only role was to put up the bid bond. Pursuant to the bid form, the court reasoned, if the successful bidder is awarded the contract and fails to execute the contract within the specified time, then the *945 State has a right to retain the bond as liquidated damages. In this case, the court found, the bid was non-responsive; therefore, the contract should not have been awarded to Joint Venture. The district court allowed the State fifteen days to amend its petition, pursuant to La.Code Civ. Proc. art. 984; however, when the State did not amend it petition, the district court signed a judgment dismissing the State’s claims with prejudice.
The State appealed, alleging the district court erred: (1) in holding the State was not entitled to liquidated damages; (2) in allowing fraudulent documentation to shield the defendants from damages; and (3) by ruling that the petition did not state a cause of action for the tort of misrepresentation. The State argued it relied on the documents Joint Venture submitted, and when it could not comply with the terms, the State was entitled to retain the bid bond. The State further argued it had no way of checking whether the surety complied with the bid requirements, and thus relied on the representations of both the bidder and the surety.
The court of appeal rejected these arguments, holding the State as the awarding authority has a duty to carefully consider the written bid. Further, the appellate court reasoned public bid law mandates the sources to determine whether a surety company is authorized, and the State made no showing that it was unable to check these sources before it awarded the contract. The court rejected the State’s contention that it had no duty to determine compliance, pointing to La.Rev.Stat. 38:2212 A(l)(b)(i), which provides that the provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived. The appellate court pointed out that a nonconforming bid must be rejected as non-responsive. See Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth., 04-211, 04-212 (La.3/18/04), 867 So.2d 651, 663. In this case, the court reasoned, the bid bond was not written by an authorized surety; therefore, the bid did not comply with the statutory requirements and should have been rejected by the public entity as non-responsive. Furthermore, the court noted, any bid not meeting the statutory requirements of the statute is null and void. La.Rev.Stat. 38:2220. The appellate court lastly declined to rule on whether the State’s tort claims are actionable, noting the bid should have been rejected by the State because it was non-responsive.
We granted the State’s writ application to consider the correctness of the lower courts’ rulings. State of Louisiana, Div. of Admin. v. Ifinity Surety Agency, L.L.C., 10-C-2264 (La.1/14/11), 56 So.3d 950.
DISCUSSION
The narrow issue presented in this case is whether the State’s petition asserts a cause of action against defendants such that its suit should be allowed to proceed. For the reasons set forth below, we find the defendants’ exceptions of no cause of action should have been overruled.
A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant. Ramey v. DeCaire, 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 118; Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La.1993). The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition, which is done by determining whether the law affords a remedy on the facts alleged in the pleading. Ramey v. De *946 Caire, p. 7, 869 So.2d at 118. No evidence may be introduced to support or controvert an exception of no cause of action. La.Code Civ. Proc. art. |a931. Consequently, the court reviews the petition and accepts well-pleaded allegations of fact as true. Ramey v. DeCaire, p. 7, 869 So.2d at 118; Jackson v. State ex rel. Dept. of Corrections, 00-2882, p. 3 (La.5/15/01), 785 So.2d 803, 806; Everything on Wheels Subaru, 616 So.2d at 1235. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Ramey v. DeCaire, p. 6, 869 So.2d at 118; Montalvo v. Sondes, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.
Louisiana utilizes a system of fact pleading. La.Code Civ. Proc. art. 854 cmt. (a); Montalvo at p. 6, 637 So.2d at 131. Accordingly, it is not necessary for a plaintiff to plead the theory of his case in the petition. Ramey v. DeCaire, p. 7, 869 So.2d at 118; Kizer v. Lilly, 471 So.2d 716, 719 (La.1985). Nevertheless, the mere conclusions of the plaintiff unsupported by facts do not set forth a cause of action. Ramey v. DeCaire, p. 7, 869 So.2d at 118; Montalvo v. Sondes, p. 6, 637 So.2d at 131.
The mover has the burden of demonstrating the petition states no cause of action. City of New Orleans v. Board of Com’rs of Orleans Levee Dist., 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a de novo review because the exception raises a question of law and the lower court’s decision is necessarily based solely on the sufficiency of the petition. Ramey v. DeCaire, pp. 7-8, 869 So.2d at 118; Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; City of New Orleans, p. 28, 640 So.2d at 253. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief. Ramey v. DeCaire, p. 8, 869 So.2d at 118; City of New Orleans, p. 29, 640 So.2d at 253.
| inAccepting all of the allegations in the State’s petition as true and applying the legal principles set forth above, see Ramey v. DeCaire, 03-1299, p. 8, 869 So.2d at 119, we find the State’s petition alleges facts sufficient to state a cause of action under the public bid law. As the petition alleges, the bid form established the agreement between the State, Joint Venture, and Infinity Surety, namely that the lowest responsible and responsive bidder, if awarded the project, was to execute the contract and return the documents along with a valid performance and payment bond within ten days of being awarded the project, and the failure to do so would result in forfeiture of the bid bond for liquidated damages. The petition alleges that Joint Venture was awarded the project as the lowest responsive bidder, but Joint Venture failed to return in a timely manner both the contract and a proper performance and payment bond and the State unsuccessfully attempted to call in the bid bond. Thus, on the face of its petition, the State has established a cause of action sounding in contract.
Whether Joint Venture breached the contract; whether Joint Venture’s bid was responsive; whether Joint Venture was the lowest responsible and responsive bidder; whether the State, as opposed to the bidder, had the sole and affirmative duty to determine if Infinity Surety was an authorized surety under the bid form; whether the State could instead reasonably rely on the representations of the bidder and the surety in the bid form; whether the State should have or could have rejected the bid as defective; whether the insurance code precludes Infinity Surety as an *947 unauthorized insurer from asserting its surety contract is void; and whether the State could have waived any purported defects in the bid bond, are all issues that should be resolved at trial or in a summary proceeding, rather than on the peremptory exception of no cause of action. Rather than focusing on the allegations in the petition, see Scheffler, p. 5, 950 So.2d at 646, both courts below ^apparently made a factual determination that Joint Venture’s bid was non-responsive and should have been rejected by the public entity, and then based their rulings sustaining the exceptions on that determination. We conclude such a basis for sustaining the exceptions of no cause of action was improper.
CONCLUSION
For the reasons set forth above, upon our de novo review, we find the State of Louisiana’s petition for damages and forfeiture of the bid bond sufficiently alleges facts on which it could be awarded relief under the public bid law. Accordingly, the rulings of the lower courts are reversed, and the defendants’ exceptions of no cause of action are overruled.
REVERSED AND REMANDED
KNOLL, Justice, dissents with written reasons.

. La.Rev.Stat. 38:2219 provides the minimum requirements for a surety bond written for a Louisiana public works project. It provides that any surety bond written for a public works project shall be written by:
(1) a surety or insurance company currently on the U.S. Department of the Treasury Financial Management Service list of approved bonding companies which is published annually in the Federal Register, or
*943 (2) a Louisiana domiciled insurance company with at least an A- rating in the latest printing of the A.M. Best's Key Rating Guide, or
(3) an insurance company that is either domiciled in Louisiana or owned by Louisiana residents and is licensed to write surety bonds.