Judgment rendered April 14, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,869-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GEOSPORT LIGHTING
SYSTEMS, LLC

Plaintiff-Appellant

versus

CITY OF BOSSIER CITY,
LOUISIANA

Defendant-Appellee

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 160417

Honorable E. Charles Jacobs, Judge

* * * * *

JONES WALKER, LLP
By: Brandon Kelly Black
      David Matthew Kerth
      Charles Parker Kilgore
      Tiffany Nicole Dupree

Counsel for Appellant

KEAN MILLER, LLP
By: Michael D. Lowe

Counsel for Appellee,
City of Bossier City,
Louisiana

CHAFFE MCCALL LLP
By: Scott Cameron Barney
      Katharine R. Colletta
      Amy L. McIntire

Counsel for Appellee,
Musco Sports Lighting,
LLC

* * * * *

Before GARRETT, COX, and STEPHENS, JJ.

**GARRETT, J.**

The plaintiff, GeoSport Lighting Systems, LLC ("GeoSport"), appeals from a trial court judgment granting exceptions of no cause of action and no cause of action and/or prescription filed on behalf of the City of Bossier City, Louisiana ("City"), and Musco Sports Lighting, LLC ("Musco"), and denying as moot GeoSport's motion for leave to file a second amended petition for damages against the City and Musco. For the following reasons, we reverse and remand to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

This case arises from a dispute regarding a public bid for lighting at various sports fields owned and operated by the City. One project involved the replacement of lights and the other project involved new lighting. In June 2019, the City issued an advertisement for public bids for the projects. According to GeoSport, bid documents were assembled by Purtle & Associates ("Purtle"), an engineering firm, with assistance from Musco. The bid documents specified the use of Musco lights or a product that met or exceeded the standards set forth in the bid documents.[1] Musco is a competitor of GeoSport.

Four companies bid on the project, including GeoSport and Musco. When the bids were opened on August 6, 2019, GeoSport was the low bidder at $2,263,000. Musco's bid was the next lowest at $2,292,015. GeoSport's bid utilized its own lights, not Musco's, and after the bid opening, GeoSport submitted information on August 15, 2019, to show that

---

[1] According to counsel for the City in brief and in argument, the Musco product was preferred because their lights reduced complaints from neighbors of being too bright and they had a component known as a driver that was located in the pole rather than in the light fixture, making repair of the lights easier. These contentions go to the merits of the case, which are not before us.

its lights were the functional equivalent of Musco's. It also furnished a required list of references of work done in Louisiana. Bidders not using Musco lights were required to include a revised electrical distribution plan signed by a licensed Louisiana electrical engineer. GeoSport contended that this was a "pay to play" provision, requiring a bidder to expend a significant amount in order to bid, and this was prohibited by the Louisiana Public Bid Law ("PBL"). Regarding this requirement, GeoSport responded with "N/A" on its post-submission information.

On August 23, 2019, the City's purchasing agent sent a letter to GeoSport informing it that its bid was found to be nonresponsive for failure to furnish all required information and that the information furnished was incomplete. Regarding the replacement project, Purtle issued a shop drawing review which listed 25 deficiencies. Regarding the new lighting project, Purtle's shop drawing review listed 23 deficiencies. GeoSport was instructed that, under Section 25 of the Public Works Standards and Conditions, it had five working days to protest the determination in writing to the purchasing agent for the City.

On August 27, 2019, two working days later, GeoSport's counsel sent a letter to the City asking that its letter be considered notice of GeoSport's protest of the rejection of its responsive bid. GeoSport also claimed that the City rejected its references and, therefore, also found that the company was a *nonresponsible* bidder in addition to being *nonresponsive*. GeoSport contended that, because it was found to be *nonresponsible*, it was entitled to

an informal hearing under La. R.S. 38:2212(X), to refute the reasons given for rejecting GeoSport's bid.[2]

On August 28, 2019, the City's purchasing agent sent a letter to GeoSport rejecting the request for an informal hearing, arguing that GeoSport's bid was found to be nonresponsive. There was no determination that GeoSport was not a "responsible" bidder, as required for an informal hearing. The letter stated that, under Section 25, quoted above, any protest must contain, at a minimum, a statement of the grounds for the protest which would allow the City to respond to each substantive issue raised in the protest. Based upon the information provided and Purtle's review and rejection of GeoSport's submittals, the protest was denied. The City stated that it intended to proceed with the acceptance of the next lowest responsive

---

[2] La. R.S. 38:2212(X) provides:

X. (1) If the public entity letting the contract proposes to disqualify any bidder, either as a potential bidder or as the low bidder, on grounds that such bidder is not a "responsible bidder" such public entity shall do all of the following:
(a) Give written notice of the proposed action to such bidder and include in the written notice all reasons for the proposed action.
(b) Give the bidder who is proposed to be disqualified the opportunity to be heard at an informal hearing at which such bidder is afforded the opportunity to refute the reasons for the proposed action.
(2) The informal hearing shall be conducted prior to award of the public work.
(3) The informal hearing shall be a condition precedent to any action by the bidder adverse to the public entity, its representatives, employees, and designers.
(4) The informal hearing shall be conducted by the public entity not later than five business days after the date of the notice of disqualification of such bidder. The public entity shall issue a ruling in writing and deliver it to the affected bidder not later than five business days after the date of the informal hearing.
(5) No award of the contract for the public work shall be made by the public entity prior to the expiration of at least five working days following the date of issuance of the decision by the hearing official.
(6) The provisions of this Subsection shall not apply to such actions of the Department of Transportation and Development.

3

bid. The letter included contact information for the City's legal counsel and directed that any further questions or inquiries be made to that attorney.

On August 30, 2019, five working days after the City's letter rejecting GeoSport's bid, GeoSport wrote a letter to the City's attorney and again requested an informal hearing. The letter claimed that the requirement of a revised electrical plan from bidders not using Musco products constituted a "pay to play" provision which is prohibited under the PBL. GeoSport also included responses to all the items listed in Purtle's shop drawing reviews of the projects which were found to be deficient or excluded.

On September 4, 2019, the City's attorney responded, denying the request for an informal hearing, arguing that GeoSport was found to be a nonresponsive bidder, not a nonresponsible bidder. The City pointed out that GeoSport chose not to use a pre-bid procedure for approval of non-Musco products. The letter addressed GeoSport's responses to Purtle's shop drawing reviews and remained firm in the City's conclusion that the company failed to provide all required information.

On September 4, 2019, the City awarded the contract to Musco. The contract was signed by the parties on September 10 and September 11, and was recorded on September 12, 2019. Musco began work on the projects.

On September 10, 2019, GeoSport instituted this suit by filing a petition for preliminary and permanent injunctive relief and declaratory relief. Voluminous exhibits were attached to the petition, which included the bid documents, addendum, GeoSport's bid, bid tabulation, submittals, and all of the correspondence outlined above. Claiming violations of the PBL by the City, GeoSport sought to enjoin the award of the bid to a higher bidder, to annul the award, and to obtain an injunction to prohibit the award

4

of the contract to a higher bidder. Only the City was named as a defendant at that point. According to GeoSport, the bid documents violated the PBL by: (1) allowing bid specifications to be designed by Musco in order to stifle competition and to ensure that only a Musco product would qualify; (2) requiring an identical product to Musco's, not one that was functionally equivalent; (3) requiring preapproval of a product; (4) containing "pay-to play" provisions; and (5) requiring the prequalification of bidders.

GeoSport alleged that its bid was wrongfully rejected by the City. GeoSport also contended that the City violated the PBL by failing to provide the notice and an informal hearing required by La. R.S. 38:2212(X) prior to rejecting GeoSport's bid. The company continued to insist that, because the City rejected its references, it was found to be a nonresponsible bidder, as well as a nonresponsive bidder.

On September 13, 2019, GeoSport fax-filed a motion to set the petition for preliminary injunction for hearing on the court's next available hearing date, pursuant to La. C.C.P. art. 3602. The hearing was set for October 14, 2019.

On September 27, 2019, the City filed answers, exceptions, and affirmative defenses. It asserted the exception of nonjoinder, arguing that Musco was needed for just adjudication. It filed a peremptory exception of prescription and/or no cause of action claiming that GeoSport failed to timely raise objections to those portions of the bid process it alleged violated the PBL and waived the right to object. The City asserted an exception of no cause of action arguing that GeoSport was not entitled to an informal hearing under La. R.S. 38:2212(X) and, because the contract had already been awarded to Musco, the issue was moot. The City filed a dilatory

5

exception of unauthorized use of a summary proceeding and/or improper cumulation of actions, pointing out that an injunction is a summary proceeding and a declaratory judgment requires an ordinary proceeding.

GeoSport filed an amended petition on October 16, 2019, and Musco was added as a defendant. GeoSport reasserted the allegations contained in the original petition and added some new ones about alleged improprieties by the defendants in violation of the PBL. It further urged that its claims were not waived and were timely asserted. Due to the filing of the amended petition, the hearing on the original petition for preliminary injunction was continued without date by agreement of GeoSport and the City. The hearing was eventually set for November 25, 2019.

The City and Musco each filed exceptions of no cause of action and no cause of action and/or prescription to the amended petition. They argued improper cumulation of actions in seeking both an injunction and a declaratory judgment in the same petition.[3] The City and Musco asserted that GeoSport was not entitled to an informal hearing under La. R.S. 38:2212(X), and that its claims had prescribed or were waived because the company was required to assert alleged violations of the PBL prior to the bid. The defendants argued that GeoSport failed to raise its complaints regarding violation of the PBL at any time prior to or during the bidding

_____

[3] On November 19, 2019, the parties entered into a consent judgment agreeing that the preliminary injunction should be denied as moot because Musco was near completion of the project and it might be complete by the date of the hearing set for November 25, 2019. They also agreed that the defendants' exceptions of improper cumulation of actions and unauthorized use of a summary proceeding should be denied as moot. GeoSport reserved the right to pursue any remaining claims against the City and Musco. The City and Musco reserved all exceptions and defenses to GeoSport's claims. The exceptions of no cause of action and prescription remained pending. The consent judgment was signed by the trial court on November 20, 2019, and the hearing on the defendants' exceptions was set for January 27, 2020.

6

process despite its knowledge of all relevant facts. Instead, GeoSport submitted its bid and attempted unsuccessfully to comply with the specifications regarding post-bid submissions that it contended were in violation of the PBL. After its bid and post-bid submissions were deemed unresponsive, GeoSport asserted its complaints. The defendants maintained that GeoSport waived its claims because they were not timely asserted.

GeoSport filed a motion for leave to file a second amended petition to request a declaration that the contract between the city and Musco was null and void and that GeoSport was entitled to damages and attorney fees for the arbitrary rejection of its bid in violation of the PBL. The City consented to the filing, but Musco objected. It argued that GeoSport waived all rights by not raising objections prior to the bid and the company could not amend its petition to cure this fatal defect.

A hearing was held on the exceptions and the request for leave to file the second amended petition on January 27, 2020. No evidence was adduced, but the court heard lengthy arguments by counsel. The arguments digressed into a discussion of the facts and the merits of the underlying case instead of focusing on the narrow issue before the court—timeliness.[4]

_____

[4] At one point during the hearing, the following colloquy occurred:

> [Court]:
> So you want me to substitute my judgment of the City and the City's engineer for functional equivalency?
> [GeoSport's counsel]:
> That is a factual question, Your Honor. That's why – that's why this no cause of action's not the right place to do it.

We note that in La. R.S. 38:2212.2(C)(2) and (T)(2), the PBL provides:

> C. (2) Wherever in specifications the name of a certain brand, make, manufacturer, or definite specification is utilized, the specifications shall state clearly that they are used only to denote the quality standard of product desired and that they do not restrict bidders to the specific brand, make, manufacturer, or specification named; that they are used only to set

7

forth and convey to prospective bidders the general style, type, character, and quality of product desired; and that equivalent products will be acceptable.

T. (2) Wherever a public entity specifies the name of a certain brand, make, manufacturer, or uses a definite specification, the bidding documents shall state clearly that they are used only to denote the quality standard of product desired and that they do not restrict bidders to the specific brand, make, manufacturer, or specification named; that they are used only to set forth and convey to prospective bidders the general style, type, character, and quality of product desired; and that equivalent products may be acceptable. It shall be the responsibility of the professionally employed architect or engineer to determine what is considered an equivalent product on any and all projects in which he has been legally employed to perform his professional services.

The use of a closed specification is prohibited by La. R.S. 38:2290. That statute provides:

A. No architect or engineer, either directly or indirectly, shall submit a closed specification of a product to be used in the construction of a public building or project, unless all products other than the one specified would detract from the utility of the building, or except in those cases where a particular material is required to preserve the historical integrity of the building or the uniform appearance of an existing structure, or is required as part of an integrated coastal protection project, as defined in R.S. 49:214.2, for the evaluation of new and improved integrated coastal protection technologies.

B. A closed specification shall not be submitted or authorized when any person or group of persons possess the right to exclusive distribution of the specified product, unless the product is required to expand or extend an existing system presently operating at the facility or site, or if a specified product is required as part of an integrated coastal protection project, as defined in R.S. 49:214.2, for the evaluation of new and improved integrated coastal protection technologies. However, no such closed specifications shall be allowed until rules have been promulgated by the division of administration after oversight by the Senate and House Committees on Transportation, Highways and Public Works and other appropriate legislative committees.

Further, La. R.S. 38:2292 states:

The approving authority may accept a closed specification only after it determines that all products brought to its attention are excludable under the provisions of R.S. 38:2290, however, the approving authority must reject the closed specification, should another product of equal utility and appearance be submitted to them prior to letting of the bid, in which event the specifications must be amended so as to allow substitution of an equal.

Courts have been called upon to determine whether a product is functionally equivalent to those specified in a bid. *See Akers v. Bernhard Mech. Contractors, Inc.*, 48,871 (La. App. 2 Cir. 4/16/14), 137 So. 3d 818, *writ denied*, 14-1040 (La. 9/12/14), 148 So. 3d 931, *writ denied*, 14-1100 (La. 9/12/14), 148 So. 3d 934, and *writ denied*, 14-1103 (La. 9/12/14), 148 So. 3d 935. This issue goes to the merits of the case and is not before us.

The defendants argued that the bid specifications allowed for approval of equivalent products either before or after the bid. They contended that the post-application information furnished by GeoSport did not contain everything required and what was furnished was "woefully inadequate" to establish that its product was equivalent to Musco's. The City contended that GeoSport's lights did not meet the bid specifications, and on August 23, 2019, GeoSport was notified that its bid was nonresponsive. On August 27, 2019, GeoSport asked for an informal hearing it was not entitled to, and on August 28, the City informed GeoSport that it was moving ahead with the project. The contract with Musco was recorded on September 12, 2019. When GeoSport filed suit on September 10, it did not ask for a temporary restraining order or an expedited hearing on its preliminary injunction. According to the defendants, GeoSport waited too long to assert its claims, putting the City at a disadvantage because it was then faced with paying twice for the projects. They argued that GeoSport was required to object to the bidding process at a time when the City could have remedied the problems. Because GeoSport did not assert all its protests about the bid solicitation process within five days of the opening of the bids, the defendants maintained that it waived its objections to the bid procedure by failing to timely object. The City continued to argue that GeoSport was not entitled to a La. R.S. 38:2212(X) hearing.

GeoSport countered that it immediately protested as soon as its bid was rejected. The lawsuit was instituted before Musco and the City entered into their contract. According to GeoSport, it did not know in advance whether the City would "be reasonable" and allow a functionally equivalent product until its bid was actually rejected. On September 4, 2019, the City

said it would no longer discuss the rejection with GeoSport and the company filed this suit on September 10. GeoSport contended that the defendants' argument that any objections to the bid process had to be made before the opening of the bids would invite "thousands of lawsuits," which would unduly delay the construction process. GeoSport also argued that the PBL does not require a suit to be filed prior to award of the contract if there is an issue with the bid specifications.

At the close of arguments, the trial court granted the exceptions of no cause of action and no cause of action and/or prescription, stating as follows:

> And therefore, if GeoSport thought that there was a problem or believed that there was a problem with the bid specifications when they picked up the package they had two choices; they could've either filed an injunction at that time or a request for an injunction or a lawsuit at that time or they could've just chose not to submit a bid. I think it's somewhat disingenuous then to submit a bid, be declared the lowest responsible bidder and then . . . fail to then propose an equivalent product. And I do understand I guess a little bit of the dispute between Musco and GeoSport. Um, you know, and apparently it seems to be but, you know, even taking that in consideration they had these bid – bid specifications. They knew what their products provided and what their products didn't provide. They knew at the outset that this was gonna be an issue and the – this is something that should've been disputed and raised during the bid process, um you know before the bid was awarded or, you know, or during that five, ten-day protest period. And I just don't see, you know, where GeoSport ever attempted to do this. So based upon all that it looks like the bids were opened on August 6 of 2019 is my understanding. The contract was signed on September 10th of 2019 with Musco. Between, you know, other than some letters, you know, it doesn't seem like there was any formal protest other than the fact that these specifications provided at the outset by the City's engineers were not valid or for lack of a better word, not proper or illegal and that as soon as GeoSport got a copy of those specifications then they should've tooken whatever legal steps that they felt were proper then to challenge the specifications as not proper under the public bid law during the bid process. They did not do that and so they've waived their right then to – to the responsive versus nonresponsive and this is not an issue of responsibility. So based upon all that I am gonna respectfully grant the exception of no cause of action.

I'll respectfully note your opposition to my ruling for the record and that would render the remaining matters moot at this point[.]

On April 16, 2020, the trial court signed a judgment granting the exceptions. The motion for leave to file a second amended petition filed by GeoSport was denied as moot.[5] GeoSport's petition was dismissed with prejudice. GeoSport appealed.

## NO CAUSE OF ACTION

GeoSport contends that the trial court erred in granting the defendants' exceptions of no cause of action and/or exception of prescription, dismissing with prejudice GeoSport's claims against the City and Musco for unlawfully awarding a contract to Musco where GeoSport was the lowest responsive and responsible bidder. This argument has merit.

### Legal Principles

The peremptory exception of no cause of action is set forth in La. C.C.P. art. 927(A)(5). It tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Vince v. Metro Rediscount Co., Inc.*, 18-2056 (La. 2/25/19), 264 So. 3d 440; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Sanctuary Capital, LLC on Behalf of N. La. Bidco, LLC v. Cloud*, 53,157 (La. App. 2 Cir. 11/20/19), 285 So. 3d 123; *Port City Glass & Paint Inc. v. Brooks*, 52,534 (La. App. 2 Cir. 2/27/19), 266 So. 3d 516. "Cause of action," as used in the context of the peremptory exception, means the

_____

[5] During these proceedings in December 2019, GeoSport filed a motion to compel Musco to give proper discovery responses. Musco argued that it did not have to respond to discovery requests while its exceptions were pending and asked for a protective order. The trial court judgment also denied as moot the motion for a protective order filed by Musco and the motion to compel discovery filed by GeoSport.

operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, 10-2264 (La. 5/10/11), 63 So. 3d 940; *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, 616 So. 2d 1234 (La. 1993). The exception is triable on the face of the petition; and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Badeaux v. Southwest Computer Bureau, Inc.*, 05-0612 (La. 3/17/06), 929 So. 2d 1211; *Fink v. Bryant*, 01-0987 (La. 11/28/01), 801 So. 2d 346. In ruling on an exception of no cause of action, a court is generally limited to considering the petition and the documents attached thereto. *Robinson v. Moises*, 2014-1027 (La. App. 4 Cir. 6/10/15), 171 So. 3d 1108. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, *supra*.

Louisiana utilizes a system of fact pleading. Accordingly, it is not necessary for a plaintiff to plead the theory of his case in the petition. Nevertheless, the mere conclusions of the plaintiff unsupported by facts do not set forth a cause of action. *State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, *supra*.

No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Badeaux v. Southwest Computer Bureau, Inc.*, *supra*.

If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, *supra*; *Stonecipher v. Caddo Par.*, 51,148 (La. App. 2 Cir. 4/7/17), 219 So. 3d 1187, *writ denied*, 17-0972 (La. 10/9/17), 227 So. 3d 830. If the petition states a cause of action on any ground or portion of the demand, the exception should generally be overruled. *Badeaux v. Southwest Computer Bureau, Inc.*, *supra*; *Everything on Wheels Subaru, Inc. v. Subaru S., Inc.*, *supra*. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Badeaux v. Southwest Computer Bureau, Inc.*, *supra*. On an exception of no cause of action, the court may not make factual determinations on the merits of the claim. *See State, Div. of Admin., Office of Facility Planning & Control v. Infinity Sur. Agency, L.L.C.*, *supra*.

The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence. *City of New Orleans v. Board of Directors of La. State Museum*, 98-1170 (La. 3/2/99), 739 So. 2d 748; *Port City Glass & Paint Inc. v. Brooks*, *supra*; *Villareal v. 6494 Homes, LLC*, 48,302 (La. App. 2 Cir. 8/7/13), 121 So. 3d 1246.

An appellate court reviews a trial court's ruling on an exception of no cause of action *de novo* because the exception raises a question of law and the lower court's decision is based only on the sufficiency of the petition.

13

*Port City Glass & Paint Inc. v. Brooks*, *supra*; *Mack v. Evans*, 35,364 (La. App. 2 Cir. 12/5/01), 804 So. 2d 730, *writ denied*, 02-0422 (La. 4/19/02), 813 So. 2d 1088.

Louisiana's PBL, set forth in La. R.S. 38:2211, *et seq.*, is a prohibitory law founded on public policy. *Hamp's Const., L.L.C. v. City of New Orleans*, 05-0489 (La. 2/22/06), 924 So. 2d 104; *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 04-0211 (La. 3/18/04), 867 So. 2d 651. Pursuant to the PBL, the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions. The statute was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. A political entity has no authority to take any action which is inconsistent with the PBL. *See Hamp's Const., L.L.C. v. City of New Orleans*, *supra*; *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, *supra*.

Regarding the advertisement and awarding of work to the lowest responsive and responsible bidder, La. R.S. 38:2212(B) provides in part:

> B. (1) The provisions and requirements of this Section and those stated in the bidding documents shall not be waived by any entity.
>
> (2) Any public entity advertising for public work shall use only the Louisiana Uniform Bid Form as promulgated in accordance with the Administrative Procedure Act by the division of administration, office of facility planning and control. The bidding documents shall require only the following information and documentation to be submitted by a bidder at the time designated in the advertisement for bid opening: Bid Security or Bid Bond, Acknowledgment of Addenda, Base Bid, Alternates, Signature of Bidder, Name, Title, and Address of Bidder, Name of Firm or Joint Venture, Corporate Resolution or written evidence of the authority of the person signing the

14

bid, and Louisiana Contractors License Number, and on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth including a description for each unit; however, unit prices shall not be utilized for the construction of building projects, unless the unit prices and their extensions are incorporated into the base bid or alternates.

(3)(a) The bidding documents shall not require any bidder, other than the apparent low bidder, to furnish any other information or documentation, including the Attestation Affidavit and the E-Verification Form, any sooner than ten days after the date bids are opened; however, the apparent low bidder may submit such information or documentation at any time prior to the expiration of the ten-day period. If the apparent low bidder does not submit the proper information or documentation as required by the bidding documents within the ten-day period, such bidder shall be declared non-responsive, and the public entity may award the bid to the next lowest bidder, and afford the next lowest bidder not less than ten days from the date the apparent low bidder is declared non-responsive, to submit the proper information and documentation as required by the bidding documents, and may continue such process until the public entity either determines the low bidder or rejects all bids[.]

The bid documents in this case contain a provision in Section 25 of the Public Works Standard Terms and Conditions regarding the time for raising objections to the solicitation process and the award of bids. That provision states:

**25. PROTESTS** All protests regarding the solicitation process must be submitted in written form to the Purchasing Agent within five (5) working days following the opening of bids/proposals. This includes all protests relating to legal advertisements, deadlines, bid/proposal openings, and all other related procedures under the Local Government Code, as well as any protests relating to alleged improprieties or ambiguities in the specifications contained herein or in the contract documents. Post-award protests must be submitted in written form to the Purchasing Agent within five (5) working days after award. The protest must include, at a minimum, the name of the protestor, bid/proposal number or description of goods and services, and a statement of the grounds for protest. The Purchase Agent, having authority to make the final determination, will respond within ten (10) working days to each substantive issue raised in the protest. Allowances for reconsideration shall be made only if data becomes available

15

that was not previously known, or if there has been an error of law or regulation.

The PBL remedy for improperly awarding a bid is set forth in La. R.S. 38:2220 and requires seeking injunctive relief. That provision states in part:

> A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.

> B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part[.]

The PBL contains no time limits for seeking such injunctive relief. Under the jurisprudence, the issue of the timelines of such claims has generally been governed by the guidelines set forth by the Louisiana Supreme Court in *Airline Const. Co., Inc. v. Ascension Par. Sch. Bd.*, 568 So. 2d 1029 (La. 1990). In that case, the supreme court considered whether an unsuccessful bidder on a public contract had a cause of action for damages against the public body that awarded the contract when the unsuccessful bidder failed to first seek an injunction against the public body's execution of the contract with the successful bidder or take steps to challenge the contract prior to filing suit to recover damages based on the public body's violation of the PBL. In *Airline*, a school board advertised for bids for a school construction project in early 1986 and provided that any bids which were prequalified would be rejected. "Prequalified" meant a bid conditioned upon or qualified by the occurrence of some event. In July 1986, the bids were opened and awarded to Picou Brothers Construction Company, Inc. ("Picou"). Almost one year later, in March 1987, Airline

16

Construction Company ("Airline") filed suit for damages, without first seeking injunctive relief, claiming that Picou's bid was prequalified by stating that some of its contractors would do the work for the stated price if they were paid sums already owed by Picou for other work. The school board filed an exception of no cause of action arguing, among other things, that Airline's sole remedy was injunctive relief. The supreme court issued a narrow holding that an unsuccessful bidder on a public contract who fails to resort to the relief granted by statute by attempting to enjoin timely the execution or performance of the contract, when the facts necessary for injunctive relief are known or readily ascertainable by the bidder, is precluded from recovering damages against the public body.

The supreme court stated that an unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body. According to the supreme court, if an aggrieved bidder does not timely file a suit for injunction, he waives any right he may have to claim damages against the public body or the successful bidder.

The supreme court stated that the timeliness of a suit for injunction depends on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between the awarding of the illegal contract and the completion of construction. *Airline*, *supra*.

17

**Discussion**

According to Geosport, in its pleadings it alleged that it was the lowest responsive and responsible bidder and that it complied with all lawful requirements of the bid specifications. Based upon these allegations, which were required to be accepted as true, GeoSport maintains that it stated a cause of action against the City and Musco for the arbitrary rejection of its bid and the wrongful award of the contract to Musco.

First, GeoSport asserts that it stated a cause of action for improperly rejecting its bid in violation of the PBL. GeoSport also alleged that the bid documents requiring bidders not using Musco products to furnish the City with a revised electrical distribution plan signed by an electrical engineer licensed in Louisiana, at the bidder's expense, constituted a "pay to play" provision which is prohibited by the PBL. GeoSport alleged that requiring bidders not using Musco products to provide additional information about its products on a checklist prepared by Musco created an unlawful closed specification in violation of La. R.S. 38:2290 of the PBL.

Next, GeoSport claims that it stated a cause of action for the wrongful denial of an informal hearing under La. R.S. 38:2212(X), because, in rejecting its references, the City also found it not to be a responsible bidder, in addition to finding that its bid was not responsive.

According to the defendants, GeoSport knew about the alleged violations of the PBL when it received the bid documents and before it bid on the project. They argue that, under *Airline*, *supra*, GeoSport was required to raise any objections it had at that time, before the bids were received and opened. They also cite Section 25 of the Public Works Standard Terms and Conditions, quoted above, to argue that GeoSport was required to raise all

objections to the bidding process within five working days of the opening of the bids. The defendants urge that, because GeoSport failed to timely object to the requirements of the bid documents, it waived its objections, and therefore, it has no cause of action.[6] The City claims it did not find that GeoSport was not a responsible bidder, and, therefore, the company was not entitled to a hearing under La. R.S. 38:2212(X).

Although an unsuccessful bidder does not have a cause of action in contract against the public body, the lowest responsible bidder does have a cause of action to timely challenge the rejection of his bid and to compel the award of the contract to him. An unsuccessful bidder may sue to enjoin the public body from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder. An unsuccessful bidder on a public contract must attempt to timely enjoin the execution or performance of a contract when the facts necessary for injunctive relief are known or readily ascertainable by the bidder; otherwise, the bidder is precluded from recovering damages against

---

[6] We note that the defendants filed exceptions of no cause of action and no cause of action and/or prescription, arguing that GeoSport waived its right to assert claims arising from the rejection of its bid because the claims were not raised timely. On an exception of no cause of action, no evidence may be presented. On an exception of prescription, evidence may be considered. See La. C.C.P. art. 931. Here, no evidence was admitted. Generally, waiver, laches, and extinguishment of an obligation are affirmative defenses, and as such, they are defenses to the merits and not objections which are raised in exceptions. *Hartman Enterprises, Inc. v. Ascension-St. James Airport & Transp. Auth.*, 582 So. 2d 198 (La. App. 1 Cir. 1991), *writ denied*, 582 So. 2d 195 (La. 1991). However, the jurisprudence includes numerous cases, including *Hartman*, in which waiver of the right to object to the award of a bid has been raised through the exception of no cause of action.

We are aware of this court's opinion in *Lathan Const., LLC v. Webster Parish School Bd.*, 53,873 (La. App. 2 Cir. 4/14/21), ___ So. 3d ___, rendered on the same date as this opinion, dealing with an exception of prescription. The defendants argued that a disqualified bidder for a public works project failed to timely seek injunctive relief from the rejection of its bid. *Lathan* is distinguishable from the present case in that the disqualified bidder in *Lathan* did not file a petition seeking injunctive relief until 37 days after notice that its bid had been rejected. Further, the disqualified bidder did not possess the necessary asbestos abatement license.

the public body. *Airline*, *supra*; *Webb Const., Inc. v. City of Shreveport*, 30,491 (La. App. 2 Cir. 5/13/98), 714 So. 2d 119.[7]

The defendants cite the cases of *Apolinar v. Prof'l Const. Servs.*, 95-0746 (La. 11/27/95), 663 So. 2d 17; *Gilchrist Const. Co. LLC v. East Feliciana Par. Police Jury*, 2012-1307 (La. App. 1 Cir. 7/11/13), 122 So. 3d 35; and *Angelo Iafrate Const., L.L.C. v. State ex rel. Dep't of Transp.*, 2001-2761 (La. App. 1 Cir. 5/10/02), 818 So. 2d 973, *writ denied*, 2002-2142 (La. 11/8/02), 828 So. 2d 1125, in support of their argument that an unsuccessful bidder on a public works project cannot wait to challenge alleged deficiencies in the bidding process until after its bid has been rejected as not responsive. These cases are distinguishable on the facts from the present case.

In *Apolinar v. Prof'l Const. Servs.*, *supra*, the bid requirements for a public works project required payment of overtime wages. The low bidder was Professional Construction Services ("PCS") and that company was awarded the work. The plaintiff was an employee of PCS who sued the company for overtime wages. PCS filed a motion for summary judgment, arguing, among other things, that the bid specification requiring the payment of overtime wages violated the PBL. The Louisiana Supreme Court found that PCS was not entitled to raise the issue at that point. The supreme court reasoned that PCS did not qualify its bid or object to the provision prior to the time of bidding. It had waived any objections to the terms of the bid specifications and would not be heard to argue that it need not pay overtime

---

[7] As observed in *Webb*, *supra*, *Airline*, *supra*, was decided prior to the 1990 amendment of La. R.S 38:2220(B), but the rationale of *Airline* was essentially unchanged by the amendment. *See also Hard Rock Const., Inc. v. Par. of Jefferson*, 96-797 (La. App. 5 Cir. 1/28/97), 688 So. 2d 134.

20

wages that every other bidder agreed to pay at the time the bids were submitted.

In *Apolinar*, the very essence of the dispute is distinguishable from the present case. There was no dispute between bidders. The plaintiff was an employee of the successful bidder and was seeking to enforce the requirements of the bid concerning payment of overtime wages. There was no indication of how long after the award of the contract the employee brought his suit.

In *Gilchrist Const. Co. LLC v. East Feliciana Par. Police Jury*, *supra*, the plaintiff's bid was rejected as nonresponsive because it was not submitted in triplicate. The plaintiff filed a suit for an injunction on the issue of not filing the bid in triplicate, but also sought an order that all bids be rejected for a violation of the PBL, based upon the argument that the police jury failed to provide potential bidders with the option to submit bids electronically as required by the PBL. The plaintiff did not seek an injunction based on the violation of the PBL. The suit for injunctive relief was eventually dropped, but the plaintiff continued to seek a declaration that the award of the contract was null and void for failure to provide the option to submit bids electronically. The first circuit found that the failure to comply with the PBL had nothing to do with the reason the plaintiff's bid was rejected. The plaintiff never sought injunctive relief for the alleged violation of the PBL. Because the plaintiff knew of this alleged violation at the time the bids were advertised and failed to seek injunctive relief at that time, the first circuit affirmed the trial court judgment finding that the plaintiff had no right of action. *Gilchrist* is distinguishable in that the violation of the PBL argued by the plaintiff in that case had nothing to do

21

with the reason the bid was rejected. Further, the plaintiff in *Gilchrist* never sought injunctive relief as required by La. R.S. 38:2220.

In *Angelo Iafrate Const., L.L.C. v. State ex rel. Dep't of Transp.*, *supra*, the plaintiff submitted the lowest bid, which was later determined to be irregular for failure to replace forms in the bid proposal with forms provided to bidders in an addendum. The record showed significant problems in informing the plaintiff of the addendum. However, the plaintiff calculated its bid according to the addendum. The plaintiff sought an injunction, mandamus, and a judgment awarding it the contract. After the contract was awarded to another bidder, the plaintiff amended its petition to claim damages. The trial court granted a partial summary judgment in favor of the plaintiff, finding that its error in using the wrong bid form was not substantive. The first circuit reversed, noting the problems with informing the plaintiff of the addendum, and found that, under the PBL, the state should have postponed the opening of bids for seven days or should have rejected all bids. However, the first circuit determined that the plaintiff's submission of its bid using the addendum and its failure to object to the failure to postpone the bids, was fatal to its claim, citing *Apolinar*, *supra*.

The facts of *Angelo Iafrate Const., L.L.C. v. State ex rel. Dep't of Transp.*, *supra*, are distinguishable from the present case. In *Angelo Iafrate*, the case was decided on a motion for partial summary judgment, not an exception of no cause of action, and the dispute itself involved a question of whether the unsuccessful bidder was actually informed of changes in the bid requirements. The facts of that case showed that the unsuccessful bidder was aware of the changes and calculated its bid according to them, although the wrong form was used.

22

In this case, the arguments of the parties and the oral reasons for the trial court judgment indicate that the merits of the claims made by GeoSport were improperly considered and ruled upon by the trial court when it dismissed GeoSport's suit. Resolution of the issues raised in the exceptions filed in this case depends, not upon a factual determination of whether GeoSport's bid was responsive, if there were any violations of the PBL, or if the company was entitled to an informal hearing, but rather upon whether its objections were timely raised and were not waived. This was the narrow issue before the court. The determination of whether injunctive relief was timely sought is a fact-specific inquiry and the facts are to be evaluated under the guidelines set forth in *Airline*, *supra*.[8]

Based upon the facts and circumstances of this particular case, evaluated under the factors set forth in *Airline*, *supra*, we find that GeoSport's petition for injunctive relief was timely and it did not waive its right to bring its claims against the defendants. In its petition, GeoSport alleged that its bid was rejected due to the City's violation of the PBL by using a closed specification which allowed only a Musco product to be used on the projects and by imposing a "pay to play" provision on bidders that did not use Musco products. GeoSport also essentially urged collusion between the City and Musco to ensure that Musco won the bid and only a Musco product could be used. Although the defendants argue that GeoSport was required to seek injunctive relief either before the bidding process or within

---

[8] For an example of cases finding that injunctive relief was sought in a timely manner, see *State Mach. & Equip. Sales, Inc. v. Livingston Par. Gravity Drainage No. 5*, 98-1207 (La. App. 1 Cir. 6/25/99), 742 So. 2d 26; *Boh Bros. Const. Co., L.L.C. v. Dep't of Transp. & Dev.*, 97-0168 (La. App. 1 Cir. 7/14/97), 698 So. 2d 675, *writ denied*, 97-2113 (La. 11/21/97), 703 So. 2d 1309; and *G.D. Womack Trenching, Inc. v. Maitland Water Sys., Inc.*, 2003-1579 (La. App. 3 Cir. 4/7/04), 870 So. 2d 579.

five days of the opening of the bids, it was not until GeoSport's bid was actually rejected that the company became aware that the City was arguably violating the PBL in awarding the contract. The bids were opened on August 6, 2019, and GeoSport had ten days to make post-bid submissions regarding the product it intended to use. On August 23, GeoSport was informed by the City that its bid was found to not be responsive. Also notably, on that date the City informed GeoSport that it had five working days from the date of the rejection of its bid to formally protest that finding.

On August 27, 2019, two working days after the rejection letter, GeoSport informed the City of its intent to protest and asked for an informal hearing under La. R.S. 38:2212(X), claiming that, due to the rejection of its references, it was also found not to be a responsible bidder. On August 28, the City rejected the request for an informal hearing and advised GeoSport that any further communications should be made to the City's attorney. On August 30, GeoSport contacted the City's attorney, again asked for an informal hearing, and the company set forth its objections to the alleged deficiencies resulting in the rejection of its bid. On September 4, three working days later, the City's attorney denied the request for an informal hearing. On that date, the City also awarded the contract to Musco. On September 10, four working days later, GeoSport filed this suit for injunctive relief, asking for a hearing at the court's next available date. On September 11, the contract with Musco was fully executed and on September 12, the contract was recorded.

The timeline in the present case shows that GeoSport's suit for injunctive relief was timely. After the bid was rejected, GeoSport became aware that the City would not accept the use of anything other than a Musco

24

product. GeoSport notified the City of its intent to protest the rejection of its bid within two working days of the rejection of its bid. On September 10, before the contract was fully executed or recorded, and before Musco began work on the projects, GeoSport filed this suit and requested a hearing at the court's next available date. Although the hearing was continued numerous times, these factors show that GeoSport did not delay in objecting to the rejection of its bid. As soon as it knew that its bid had been rejected, before the City became indebted to Musco, and before the work was commenced by Musco, GeoSport protested the rejection of its bid and sought injunctive relief. It did so when the grounds for attacking the contract between the City and Musco were knowable and when corrective action could have been taken by the City. The addition of Musco as a defendant occurred approximately one month after the execution of the contract and, under the facts of this case, was timely. Whether the City wrongfully rejected GeoSport's product and ultimately rejected its bid on that basis, or whether the City and Musco engaged in wrongful conduct under the PBL, are issues to be resolved in court at a later date.

Even though timely apprised of a serious challenge to the rejection of GeoSport's bid, the City immediately proceeded to execute the contract with Musco and to begin work on the projects. Evaluated according to the factors outlined in *Airline*, *supra*, GeoSport's petition for injunctive relief was timely and its cause of action for injunctive relief and to obtain an informal hearing under La. R.S. 38:2212(X) were not waived.

In reaching this conclusion, we are not expressing any opinion on the merits. We are not finding that the PBL was violated, that GeoSport's bid was wrongfully rejected, or that GeoSport was entitled to an informal

hearing under La. R.S. 38:2212(X). Rather, we simply find that GeoSport has alleged sufficient facts to state a cause of action and, because its suit for injunctive relief was timely, its cause of action has not been waived. The trial court judgment on this issue is reversed.[9]

## SECOND AMENDED PETITION

GeoSport argues that the trial court erred in failing to grant its motion to file a second amended petition. It contends that, because the exceptions should not have been granted, the trial court erred in finding that the motion to file the second amended petition for damages and attorney fees was moot. This argument has merit.

---

[9] Although we have found that the exceptions were improperly granted, we deem it necessary to address one of GeoSport's contentions. La. R.S. 38:2212(B)(1) states that the provisions and requirements of the PBL and the bidding documents cannot be waived by any entity. GeoSport has argued, both below and before us, that a defendant's violation of a substantive requirement of the PBL cannot be waived. According to GeoSport, La. R.S. 38:2212(B)(2) provides an exclusive list of 12 items that bidders may be required to submit. GeoSport cites *Durr Heavy Const., LLC v. City of New Orleans*, 2016-609 (La. 4/15/16), 189 So. 3d 384, and *Leblanc Marine, L.L.C. v. Div. of Admin., Office of Facility Planning & Control*, 2019-0053 (La. 10/22/19), 286 So. 3d 391, in support of its arguments.

This argument is not persuasive. The list in La. R.S. 38:2212(B)(2) deals with items that can be required at the time of the bid opening. La. R.S. 38:2212(B)(3) contemplates the requirement of other documents after the opening of the bids. *Durr* and *LeBlanc* are distinguishable from the present matter. The language cited by GeoSport in *Durr* is found in a concurrence to a writ grant and discusses the information that may be required of bidders at the opening of bids. The language quoted by GeoSport, regarding the limits on information that can be required to evaluate a bid's responsiveness, must be considered in context.

*LeBlanc* dealt with bid instructions under La. R.S. 38:2212(B)(5), concerning the manner in which a person's authority to bid could be established. The PBL set forth three methods to establish that authority. The bid instructions considered in *LeBlanc* allowed only two methods. Because the bid instructions in that case were more restrictive than the statute, they were invalid.

In our view, GeoSport has not established that, because the requirements of the PBL cannot be waived, there are no time limitations to objecting to violation of the PBL. The law contemplates that objections to the bid process will be raised through suits for injunctive relief. La. R.S. 38:2220. The timeliness of seeking that relief is evaluated under the jurisprudential rule set forth in *Airline*, *supra*. As discussed above, we have found that GeoSport's claims were timely asserted.

Because we find that the trial court erred in granting the exceptions and dismissing GeoSport's suit, the trial court also erred in finding that GeoSport's motion to file a second amended petition was moot. The trial court's decision on this issue is reversed.

## CONCLUSION

For the reasons stated above, we reverse that portion of the trial court judgment sustaining the exceptions of no cause of action and no cause of action and/or prescription filed by the defendants, the City of Bossier City and Musco Sports Lighting, LLC, and dismissing the claims of the plaintiff, GeoSport Lighting Systems, LLC. We also reverse that portion of the trial court judgment finding that the plaintiff's motion for leave to file a second amended petition was moot. We remand the matter to the trial court for further proceedings. Costs in this court are assessed one-half to the City of Bossier City and one-half to Musco Sports Lighting, LLC.[10]

**REVERSED AND REMANDED.**

---

[10] According to R.S. 13:5112, when court costs are assessed against a political subdivision, such costs shall be expressed in a dollar amount in the decree of the appellate court. Accordingly, the total amount of appellate costs in this case is $6,721. The City of Bossier City is ordered to pay one-half this amount, $3,360.50.